ALFRED M. SEIXAS AND GEORGE PARDO, PLAINTIFFS, *v.* GEORGE P. OCKERSHAUSEN AND CATHARINE A. HEALY, DEFENDANTS.

*Tender of a part of goods sold — right of the purchaser to purchase other goods, after rejecting those tendered which do not comply in quality with the contract — when he is not obliged to accept a second tender made by the vendor.*

On February 4, 1885, bought and sold notes were exchanged by which the plaintiffs sold to the defendants 150 hogsheads of choice Ponce molasses "to be shipped either by sail or steam, whichever quickest." On the arrival of the "O. M. Marrett," from Ponce, with 210 hogsheads of molasses consigned to the plaintiffs, they, on March eighteenth, wrote to the defendants that they had received the papers of the "O. M. Marrett," and found that she only brought forty-nine puncheons and fourteen tierces of their (defendants') molasses, and that the balance would arrive by the "Ocean Home," for which they had already the bill of lading They thereupon tendered, as part performance of the contract, the forty-nine puncheons and fourteen tierces of molasses to the defendants, who, on the nineteenth or twentieth of March, sampled the molasses, and finding it not of the quality called for, refused to accept it, and on March twenty-one purchased molasses to supply their wants of other persons.

Subsequently, and on the same day, the plaintiffs tendered to the defendants one hundred and sixty-one hogsheads and fifteen tierces of Ponce molasses, which had come upon the "O. M. Marrett," in fulfillment of their contract, which tender the defendants refused to receive upon the ground that the plaintiffs could not make a second tender after the first had been rejected. On the arrival of the "Ocean Home" the molasses brought by it was sampled, and found not to comply with the contract.

*Held,* that the defendants had a right to assume from the letter that the plaintiffs had purchased a particular lot of molasses in order to fulfill their contract;

that forty-nine puncheons were upon the " O. M. Marrett " and the balance upon the " Ocean Home," and that as the forty-nine puncheons did not comply with the contract, that the whole lot was of the same quality, and that no proper tender could be made of the molasses so purchased.

That they had a right to assume that the plaintiffs could not comply with their contract, and to go into the market and supply their wants if they felt so disposed, and after they had done this the plaintiffs could not compel them to accept other molasses, even though it came by the first vessel which arrived after the making of the contract.

*Borrowman* v. *Free* (L. R., 4 Q. B. Div., 500) distinguished.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict had been directed in favor of the plaintiffs at the New York Circuit.

On the 4th of February, 1885, bought and sold notes were exchanged between the plaintiffs and the defendants in the following language: " Sold for account of Seixas & Pardo, to George P. Ockershausen & Co., 150 hds. of choice Ponce molasses at 30c. per gallon, cost and freight, to be shipped either sail or steam, whichever quickest. Cash on presentation of documents."

The first vessel which arrived at this port after making this contract of sale, from Ponce, was the " O. M. Marrett," which vessel arrived here on the 16th or 17th of March, 1885, and had on board 210 hogsheads of molasses consigned to the plaintiffs. On the 18th of March, 1885, the plaintiffs wrote to the defendants as follows: " Dear Sirs: We beg to inform you that we have just received the papers of the schooner O. M. Marrett at our office, and find that she only brought 49 (forty-nine) pchs. and 14 (fourteen) tierces of your molasses. The balance will arrive by the Ocean Home, for which we have already the bill of lading." And thereupon the plaintiffs tendered, as part performance of the contract, the forty-nine puncheons and fourteen tierces of molasses to the defendants, and accompanied such tender with a bill. On the nineteenth or twentieth of March the defendants sampled the molasses and found that it was not of the quality called for by the bill of lading. They thereupon refused to accept and pay for the said molasses as not complying with the contract, and on the twenty-first went into the market and purchased molasses to supply their wants of other persons. Subsequently, on the same day, the plaintiffs tendered to the defendants 161 hogsheads and fifteen tierces of Ponce molasses,

which had come upon the schooner " O. M. Marrett," in fulfillment of their contract of the 4th of February, 1885. The defendants refused the tender upon the ground that the plaintiffs could not make a second tender after the first had been rejected. The plaintiffs, claiming that their tender was a good one, insisted upon the same, and, after the defendants had refused to accept such tender, sold the said merchandise on account of the defendants, realizing a certain sum not necessary to be stated in this statement of the case. Afterwards, on or about the 1st of April, 1885, the " Ocean Home " arrived, and the molasses upon the " Ocean Home " was sampled and found not to comply with the contract of the 4th of February, 1885. The plaintiffs thereupon brought suit against the defendants upon the contract of the 4th of February, 1885, and asked judgment for the difference between the contract price of the molasses and that which they realized from the sale thereof. The defendants, in answer, set up the fact of the tender of the forty-nine puncheons and its rejection, and alleged that after such rejection, and before the second tender of the plaintiffs, they had supplied their wants with other molasses without any notice or intimation from the plaintiffs that they had or proposed to have any other molasses to offer to the defendants. They also set up a counter-claim for insurance upon the molasses, alleged to have been paid by them while the same was *in transitu*. Upon the trial of the case, the learned justice directed a verdict in favor of the plaintiffs, and ordered the exceptions in the first instance to be heard at the General Term.

*Joseph A. Shoudy*, for the plaintiffs.

*George W. Ellis*, for the defendants.

VAN BRUNT, P. J. :

The only question which seems to be involved in this case is, whether the plaintiffs had a right to make the second tender to the defendants after the rejection of the forty-nine hogsheads of molasses as not complying with the terms of the contract. In the disposition of this question it is not not necessary to determine whether, in any case, such a second tender might not be permitted, because the facts in the case at bar are peculiar. It appears from

the correspondence which was exchanged between the plaintiffs and defendants in reference to this molasses, that, at the time of its arrival, the defendants were notified by the plaintiffs that only forty-nine puncheons and fourteen tierces of molasses, suitable for their contract, had arrived upon the "O. M. Marrett," and that the balance would arrive by the "Ocean Home," for which the plaintiffs already had a bill of lading. These forty-nine puncheons and fourteen tierces were tendered and were rejected. From this letter the defendants had a right to assume that the plaintiffs had purchased a particular lot of molasses in order to fulfil this contract; that forty-nine puncheons were upon the "O. M. Marrett," and that the balance was upon the "Ocean Home," and the forty-nine puncheons having failed to comply with the contract in consequence of its inferior quality, that the whole lot was of the same quality, and that no proper tender could be made of the molasses so purchased. As to the quality of that contained upon the "Ocean Home," the evidence shows that that was of the same quality as that shipped by the "O. M. Marrett," and that neither fulfilled the contract. They thus having been informed that these particular lots were the ones which the plaintiffs intended to apply upon their contract, and the tender having been made and refused upon the ground of the failure to comply with the contract in respect to quality, they had a right to assume that the plaintiffs in this action could not comply with the contract, and to go into the market and supply their wants, if they felt so disposed, and, after they had done this, the plaintiffs certainly could not compel them to accept other molasses, even though it came by the first vessel which arrived after the making of the contract, because they had notified the defendants in this action that all the molasses which they could apply to the contract in question, which had come by the "O. M. Marrett," was forty-nine puncheons and fourteen tierces, and in their subsequent action the defendants had the right to rely upon this representation. It was equivalent to a notice by the plaintiffs that they had no other molasses except such as would arrive by the "Ocean Home," and that that was of a quality similar to that which was tendered as coming from the "O. M. Marrett."

These facts and circumstances clearly distinguish the case at bar from the case of *Borrowman* v. *Free* (L. R., 4 Q. B. Div., 500). In

that case a tender was rejected from a certain ship because the tender was not accompanied by the proper shipping documents. The tender was immediately renewed from another ship accompanied by the proper shipping documents, and the court held that if the first tender was not good the party making the tender had a right to with-draw it and tender anew. There was no pretense in that case that there was any notification given to the defendant that the goods tendered wore all the merchandise which they had which would comply with the contract, and that thereupon the party to whom the tender was made went into the open market and supplied his wants, assuming, as he had a right to do, that no sufficient tender could be made under the contract. In the case at bar, just such a notice was given, and the defendants had a right to assume, from the notice which was given, and the merchandise which was tendered, that the plaintiffs could not comply with their contract, they having been notified that the only molasses which could be applied to their contract, and which had come by the " O. M. Marrett," was forty-nine puncheons, and that the balance was to arrive by the " Ocean Home." The forty-nine puncheons tendered being of an inferior quality they had a right to reject and to assume that the balance of the lot would be of the same quality, as the evidence seems to show it was. It does not seem that the plaintiffs in this case had the right to make tender after tender, and certainly if the position of the defendants was changed after the rejection of the first tender, the plaintiffs having given no intimation that they intended to renew the same, they could not be compelled to accept that which was subsequently tendered.

The claim of the defendants for insurance does not seem to have any foundation in fact. The delivery of the molasses was to be made in New York. The title to the molasses was in the plaintiffs until its arrival here; the defendants had no interest in it. Until it was tendered and accepted by them as complying with the contract, the title remained in the plaintiffs. There was, therefore, no necessity for them to insure the molasses, having no title to it, and running no risk in its loss, their only insurable interest really being the profits which they might make upon the contract. They, therefore, were not called upon to insure, and if they did so, it was at their own peril, and for the loss arising therefrom a recovery cannot be had. We, however, being of the opinion that under the

circumstances of the case, if the jury found that the defendants had, in good faith, changed their position after the rejection of the first tender, the defendants could not be called upon to accept the molasses subsequently tendered by the plaintiffs.

The exceptions must, therefore, be sustained and a new trial ordered, with costs to abide the event.

Lawrence and Potter, JJ., concurred.

Exceptions sustained, new trial ordered, costs to abide event.